SHANNON, Judge.
The appellant was indicted and tried on a 'charge of murder in the first degree and was found guilty of murder in the second degree for which he was sentenced by the court below to twenty years.
The homicide occurred on October 2, 1950, following which the defendant was *85 indicted on October 24, 1950, and was arraigned on November 10, 1950, at which time the pleas of not guilty and not guilty by reason of insanity were made. On November 16, 1950, a petition was filed with the court below to appoint two disinterested experts to examine the defendant. The lower court’s order appointed two .experts on December 13, 1950. On the experts’ report the defendant was committed to Florida State Hospital under date of January 3, 1951. He remained there until a certificate reporting defendant to be sane was given by J. T. Benbow, M. D., Clinical Director of Florida State Hospital, at Chattahoochee, Florida, dated May 31, 1956. On the date of July 24, 1956, the defendant was declared by the court below to be competent. An order was entered on November 7, 1956, declaring the defendant capable of standing trial. The trial was held on February 13 and 14, 1957.
In 1943 after a period of some months in an Army hospital, the defendant was discharged on the grounds of mental disability. In the words of Dr. C. H. Denser, who was a member- of the medical staff of the Florida State Hospital, telling about defendant’s discharge from the Army, he said:
“Yes, sir. He became panicky and upset on infiltration maneuvers and began yelling and so on, and he was hospitalized for a period of some months, and ultimately he was given a discharge on a certificate of disability.”
In his petition on November 16, 1950, the attorney for the defendant stated that the defendant was insane, and that type of insanity was dementia praecox, paranoid type. The two doctors who were appointed were Dr. Samuel G. Hibbs and Dr. C. W. Bartlett, who subsequently died. It was on their examination of the defendant and their reports that the trial court committed the defendant to Chattahoochee. At the trial Dr. C. H. Denser, who was called as the court’s witness, and Drs. J. Robert Campbell and Samuel G. Hibbs testified. There were no other experts. Dr. Campbell, who qualified as a neurologist and psychiatrist, first examined the defendant on November 9, 1950, and gave as his diagnosis that the defendant was suffering from a mental disease known as schizophrenia of a paranoid type and stated in his opinion the defendant was insane and incompetent at that time. He further gave as his opinion that the defendant’s medical illness could not have developed in recent weeks and that the patterns of his medical illness were of a nature that must have extended back several years. He further testified that he was of the opinion that there was a very strong presumption that the defendant was insane as of October 2, 1950. He was not cross-examined by the State. Dr. J. S. Hibbs was qualified as a neurologist and psychiatrist. He examined the defendant on December 11 and 21, 1950. Fie gave as his opinion that at the time of his examination the defendant was insane and that this was a chronic thing .and he had been insane for possibly several years and that the defendT ant was suffering from aural and visual’ hallucinations, and .that he could do impulsive acts without his knowledge. His diag-. nosis was schizophrenia, of paranoid type.
There was a certificate of Dr. J. T. Ben-bow, Clinical Director of Florida State Hospital, which stated that the defendant was admitted to Florida State Hospital on January 24, 1951, at which time he was classified as a case of psychosis due to convulsive disorder — epilepsy. The certificate-further shows that a staff conference on March 7, 1951, diagnosed .defendant’s condition as psychosis unclassified. At another conference on November 7, 1951, he was classified as psychosis due to convulsive disorder — -epilepsy. Dr. C. H. Denser, as a member of the 'medical staff of Florida State Hospital, examined the defendant under date of January 24, 1951, and testified that the findings were that the defendant was mentally incompetent by reason of insanity. The doctor also gave as his opinion that the defendant’s medical illness had existed sometime prior to his admission to the Florida State Hospital.
*86 The State had several witnesses who were casual acquaintances of the defendant, who testified that they saw no actions of the defendant to lead them to believe that he was insane.
The State showed neither malice nor premeditation for the homicide.
The defendant has assigned several errors that he urges are reversible, but in view of the fact that this case will have to be reversed, we do not have to decide them. In Farrell v. State, Fla.1958, 101 So.2d 130, 133, we have everything present here except the negative testimony of several casual acquaintances of the defendant, which we have already referred to. There was a question there of the testimony of the three experts as to the fact of insanity. We have in this case three experts, two of whom gave their opinions that the defendant was insane at the time he committed the homicide and the other expert, within a few weeks thereafter, expressed his opinion that he was insane then. Opposed to this we have the testimony of several lay witnesses that they have observed no acts of the defendant’s that they could classify as abnormal. The rule of law is that all men are presumed sane, but where there is testimony of insanity sufficient to present a reasonable doubt of sanity the presumption vanishes and the burden is on the State to overcome it.
In the Farrell v. State case, supra, Mr. Justice Thomas had this to say:
“It is clear to us that there was sufficient uncontradicted testimony of the appellant’s insanity at the time of the homicide to raise a reasonable doubt as to his sanity. All men are presumed sane and when there is no evidence to the contrary a jury may act upon the presumption and determine guilt without concern for the sanity, or insanity, of a defendant. But when there is testimony of insanity sufficient to present a reasonable doubt of sanity the presumption vanishes. The defendant is then entitled to an acquittal if the state does not overcome the reasonable doubt. Britts v. State, 158 Fla. 839, 30 So.2d 363.”
A study of the entire record leads us to believe that the State did not carry the burden of proof on the question of sanity and the case is therefore reversed and remanded for a new trial.
KANNER, C. J., and ALLEN, J., concur.