411 So.2d 198 (1981)
Rosemary SIRIANNI, Appellant,
v.
STATE of Florida, Appellee.
No. 80-345.
District Court of Appeal of Florida, Fifth District.
December 30, 1981.
James B. Gibson, Public Defender, and Brynn Newton, Asst. Public Defender, Daytona Beach, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and C. Michael Barnette, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
This is an appeal from a judgment of first degree murder and sentence of life imprisonment. Appellant was indicted and tried for the murder of Michael G. Armstrong who was killed in Winter Park on May 24, 1978. This was the second time this matter had been tried. The first trial ended in a mistrial.
The first point on appeal is whether the trial court erred in denying appellant's motions for judgment of acquittal where the appellant alleged that the evidence was insufficient to prove beyond a reasonable doubt that she was sane at the time of the offense.
Appellant relied upon the defense of insanity. At trial, she moved for a judgment of acquittal at the close of the state's case, arguing inter alia that the state failed to present evidence establishing beyond a reasonable doubt that she was sane at the time of the alleged offense. The trial court denied the motion.
Appellant then presented expert testimony on the issue of sanity and after rebuttal by the state, renewed her motion for judgment of acquittal. The court again denied the motion.
All persons are initially presumed sane but this presumption vanishes when there is testimony of insanity sufficient to present a reasonable doubt as to the sanity of a defendant, and the defendant is entitled to an acquittal if the state does not overcome the reasonable doubt. Byrd v. State, 297 So.2d 22, 23 (Fla. 1974).[1]
In Byrd, the court also reaffirmed the long-standing rule that the question of a defendant's mental condition at the time of *199 the offense is a question of fact for the jury. 297 So.2d at 24. As such, it is for the jury to determine the credibility of the witnesses and to resolve conflicts in the evidence. Id. See, e.g., Davis v. State, 319 So.2d 611 (Fla. 3d DCA 1975); Clayton v. State, 272 So.2d 860 (Fla. 3d DCA 1973). On appeal, the question is whether the record contains sufficient competent evidence to support the jury's verdict of sanity. Blatch v. State, 216 So.2d 261 (Fla. 3d DCA 1968).[2]
Four psychiatric experts testified for the defense and opined that appellant could not distinguish between right and wrong at the time of the offense. Dr. Meyers, the first expert, testified she observed and worked with appellant, beginning about three weeks after the Armstrong murder, for a period of two months. She testified that it was her opinion that appellant was suffering a psychotic episode (was not in touch with reality) when she shot Armstrong. On cross-examination, Dr. Meyers admitted that one suffering from a psychotic episode may be able to distinguish right from wrong and be aware of his or her actions. She further admitted that the trauma of the murder could have plunged appellant into the psychotic episode.
Dr. Merikangas, the second defense expert, testified he observed appellant just after her suicide attempt for a two day period and diagnosed appellant as suffering from chronic psychotic depression. He stated that appellant was confused and delusional at the time of Armstrong's murder.
Dr. Bernstein testified he saw appellant on two occasions at the Orange County jail, approximately seventeen months after the Armstrong murder. His examinations lasted a total of three and one-half hours and he concluded that appellant was suffering from a psychotic disorder best described as a paranoid state. According to Dr. Bernstein, appellant believed Armstrong was trying to have her kill him and at the same time was planning to drive her crazy so that she would kill herself.
Finally, Dr. Backus testified that he examined appellant approximately fourteen months after the murder and diagnosed her as having schizophrenia, schizoaffective type, depressed. On cross-examination, he admitted, however, that even with such a condition, appellant was still able to form an intent to commit an act that she knew was wrong.[3]
In rebuttal, the state produced three psychiatrists who testified that appellant knew the nature and quality of her act and was able to distinguish right from wrong at the time of the act. Dr. Kirkland saw appellant approximately sixteen months after the incident on two occasions for a total of about two hours. He diagnosed appellant as suffering from depression and personality problems, including emotional instability and hysterical and aggressive traits. Dr. Kirkland pointed out that elaborate travel plans arranged and carried out by appellant indicated an absence of mental disorganization and the fact that the gun was fired at Armstrong's head through a pillow could be viewed as an effort by appellant to avoid detection and apprehension.
Dr. Wilder testified that he examined appellant approximately sixteen months after the incident and he based his conclusion that appellant could distinguish right from wrong on her extensive travel arrangements, use of the pillow over the gun, and the fact that the apartment door was locked after the killing (R. 1922-23). These latter *200 factors indicated an intent to avoid detection.
The evidence and the testimony of the various witnesses is conflicting and it was for the jury to determine the weight to be given the evidence and to resolve conflicts in it. There was sufficient competent evidence to support the jury's verdict of sanity.
The second question raised by appellant is whether the trial court erred in denying over objection, appellant's request that the jury be instructed as to penalties.
In Tascano v. State, 393 So.2d 540 (Fla. 1981), rehearing denied, February 27, 1981, the supreme court held that the jury, upon request, must be instructed as to the minimum and maximum penalties for the offense charged and that failure to do so constitutes reversible error.
Although the jury was advised by the state attorney that the state was not seeking the death penalty in the case, the jury was never told the maximum and minimum penalties under the law; which in this case is life imprisonment with a mandatory minimum of 25 years. The jury must know that appellant would be sentenced to spend her entire life in prison and must serve at least 25 years before she could be released on parole. The fact that the maximum and minimum sentences are the same should not relieve the court from the Tascano requirement. The Supreme Court has said harmless error does not apply where the jury was not made aware of the penalty for the crime charged. We follow the rules and must reverse the conviction and order another trial.
REVERSED AND REMANDED.
DAUKSCH, C.J., and COBB, J., concur.
FRANK D. UPCHURCH, Jr., J., dissents with opinion.
FRANK D. UPCHURCH, Jr., dissenting with opinion.
In fairness to the trial judge, it should be noted that the Tascano holding was announced subsequently to the trial. However, he undoubtedly was familiar with this court's holding in Murray v. State, 378 So.2d 111 (Fla. 5th DCA 1980). Murray held that it was harmless error to fail to give an instruction on the maximum and minimum penalties. Murray was reversed by the supreme court at 403 So.2d 417 (Fla. 1981).
While, admittedly, my reasoning may be influenced by the logic of Murray, I cannot hold that the trial judge committed reversible error in failing to instruct on the minimum penalty when the only penalty remaining for the offense charged was the minimum. I concur with the majority's holding that the evidence was sufficient to support the jury's verdict that Miss Sirianni was sane at the time she committed the crime. Insanity was Miss Sirianni's only defense, one which the jury clearly rejected. To require a third trial simply because the jury was not told the defendant faced a minimum prison term of twenty-five years offends me and I suspect would offend most persons familiar with the facts of this case. Could any juror be so naive as to be misled because he or she did not understand that such a penalty was, at least, a possibility for premeditated murder? I therefore respectfully dissent.
NOTES
[1] This proposition applies even when the evidence is presented in the state's case in chief. Hence, when the state has failed to present sufficient evidence to overcome the reasonable doubt, the defendant is entitled to a judgment of acquittal. Farrell v. State, 101 So.2d 130 (Fla. 1958); Mitchell v. State, 104 So.2d 84 (Fla. 2d DCA 1958).
[2] Here appellant moved for judgments of acquittal and therefore admitted not only the facts in evidence but also every conclusion favorable to the state that a jury might fairly and reasonably infer from the evidence. The trial court was required to submit the case to the jury unless the evidence was such that no view which the jury may lawfully take of it favorable to the state could be sustained under the law. Where reasonable men may differ as to the proof or facts from which an ultimate fact is sought to be established, the court should submit the case to the jury for their finding. Lynch v. State, 293 So.2d 44 (Fla. 1974).
[3] On cross-examination, Dr. Backus testified that an attempted suicide, in and of itself, does not indicate an inability to distinguish between right and wrong and that suicide can have a rational purpose in a person's life.